**Alfred WALLACE, Appellant/Cross–Respondent,**

v.

**Lucretia WALLACE, Respondent/Cross–Appellant.**

**No. ED 90431.**

Missouri Court of Appeals, Eastern District, Division One.

Sept. 30, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 13, 2008.

Application for Transfer Denied Dec. 16, 2008.

Michael A. Gross, St. Louis, MO, for appellant/cross-respondent.

JoAnne S. Wilson, St. Louis, MO, for respondent/cross-appellant.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Alfred Wallace (Husband) appeals from the trial court's Amended Findings, Conclusions, Order and Judgment (Judgment) on a Motion to Modify Decree of Dissolution of Marriage (Motion to Modify) filed by Lucretia Wallace (Wife), *inter alia*, awarding Wife modified increased child support and attorney's fees. Wife cross-appeals from the Judgment, which also denies Wife's Motion to Set Aside Fraudulent Conveyances in Order to Avoid Judgment (Motion to Set Aside Fraudulent Conveyances). We affirm in part and reverse in part.

### Background

Husband and Wife were married on January 15, 1989. One daughter (Daughter) was born of the marriage on April 2, 1989. The marriage was dissolved by a Decree of Dissolution on October 1, 1998. The dissolution decree granted Wife primary legal custody of Daughter. Husband was granted temporary custody and visitation, and was ordered to pay $577 per month in child support, as paid by Husband's Social Security benefits. Additionally, the dissolution decree granted Husband his pension and retirement from Bi–State Transit, and several properties, including 4037–39 Pleasant Avenue, 5820 Ridge Avenue, 3108 Kimberly Avenue, 1314–16–18–20 Walton Avenue, 4656 Cottage Avenue, and 5818 Cates Avenue. Wife was granted all the property in her possession and her pension from her employment.

Wife filed a Motion to Modify on September 17, 2002, alleging substantial and continuing changed circumstances. In her motion, Wife alleged that her health had deteriorated and had substantially reduced her income; Daughter had become a teenager and her needs substantially increased; and Husband had failed to report his full, substantially greater income at the time of the dissolution. On February 25, 2003, Husband filed his answer, which stated that since the dissolution decree, he retired and received retirement and Social Security, and income from some properties.

The trial court entered its first judgment granting Wife's modification on September 6, 2005. Husband was ordered to pay to Wife $1,940.78 per month for child support, in addition to any amounts received by Wife from Social Security for Daughter's support, retroactive to the date of filing of Wife's Motion to Modify, totaling $64,382.63, and to pay $18,675 toward Wife's attorney's fees. However, on April 20, 2006, this court reversed the judgment and remanded for a new trial because tapes of the proceedings were missing and, therefore, a transcript of the proceedings could not be prepared.

Meanwhile, on April 14, 2006, Wife interpleaded Husband's current wife, Michelle Wallace (Current Spouse), and filed against both Husband and Current Spouse a Motion to Set Aside Fraudulent Conveyances. Wife alleged that during the pendency of the modification action, Husband had transferred all of his property, from which he was deriving income, to Current Spouse.

### Hearing on Wife's Motions

The relevant hearing concerning Wife's Motion to Modify and Motion to Set Aside Fraudulent Conveyances was conducted on May 3 and May 21, 2007, at which the following evidence pertinent to the issues on appeal was adduced.

At the time of the hearing, Daughter was 18 years old and about to graduate

from high school. Wife had been receiving $726 per month from Husband's Social Security disability payments. According to Wife, Daughter would not receive any more Social Security payments beginning June 2007, after her high school graduation. Husband testified that Daughter would continue to receive the monthly Social Security benefits as soon as she enrolled in a college.

Wife and Daughter both testified as to Daughter's expenses. During the 2004–2005 academic school year, Daughter completed two semesters of college Spanish, for which Wife paid $488. Daughter presented evidence of her invitation to participate in several out-of-town leadership forums, including the National Youth Leadership Forum on Medicine, and the 2006 Congressional Student Leadership Conference. Daughter testified that the cost to attend the leadership trips ranged from $2000 to $5000. Daughter also traveled to perform with her marching or concert bands, which included trips to Hawaii, Chicago, Cincinnati, and Kansas City. Additionally, Daughter visited southern colleges on the Black College Tour during the 2005–2006 school year at a cost of $450. Daughter testified that Current Spouse gave her $280 for the Hawaii trip, but Husband did not give her any money for the trips.

Wife also paid for Daughter's extracurricular activities, including participation in the concert and marching bands, as well as the purchase of Daughter's saxophone and clarinet.

Wife and Daughter testified as to Daughter's graduation expenses, including $547 for a class ring, $348 for announcements, and $713 for the prom. Daughter testified that when she asked Husband to help Wife pay for the graduation expenses, he refused claiming the expenses were unnecessary. Wife also purchased a car for

Daughter for approximately $5000, plus taxes, license, and insurance costs. Husband objected to the purchase of the car. Both Wife's and Daughter's automobiles have been repossessed during the pendency of this proceeding, and Wife withdrew funds from her 401(k) plan to pay her mortgage. Wife testified that when she asked Husband to help her pay for some expenses, he said he could not help.

Wife also introduced evidence that she paid a number of dental and medical bills for Daughter's orthodontics, eczema and acne, asthma, and arthroscopic knee surgery and chiropractic services following an automobile accident. Husband testified that he was not asked by Wife to pay for Daughter's medical expenses that were not covered by insurance. Wife testified that Husband's health insurance on Daughter had expired. Husband testified that he had current medical insurance for Daughter, for which he paid $131 monthly, and he did not know whether his insurance paid for office visits.

Daughter testified that she has been accepted to, and received scholarship offers from, Southern Illinois University at Edwardsville, University of Missouri at Rolla, Fontbonne University, and Avila University. She testified that she would choose to attend Avila University because it awarded her with the most financial aid and brought the total cost for her to attend less than the other schools. However, she said she has been unable to visit the school because of the costs involved.

Wife testified that her gross income for 2004 was $29,123. In 2005, Wife earned $32,156.86, and in 2006 she earned $36,414 from her employment.

Husband testified that in 2006 he received $497 per month from Bi–State, $314 per month from the Veterans Administration, and $1364 per month from Social

Security for a total monthly income of $2175. He presented the same income for 2005.

Evidence was presented that for the 1998 dissolution proceedings, Husband's 1998 Statement of Income and Expense listed as income his retirement and Social Security. His 1998 Statement of Property listed property at 4037–39 Pleasant, 3108 Kimberly, 1314–16–18 Walton, 4656 Cottage, and his home at 5818 Cates, which were awarded to him in the dissolution proceeding. However, when he filed the properties with the Recorder of Deeds following the proceedings, Husband also filed property at 2134 Obear, and another property at 4035 Cottage. Husband testified during the May 2007 hearing that he was receiving rent from those properties. On Husband's Statement of Income and Expense prepared for the modification proceedings and dated June 2004, he listed $159,612 as income from properties, and included the properties at 2134 Obear and 4035 Cottage, plus property at 5863 Minerva, in addition to the properties he had been granted in the dissolution decree. Husband's Statement of Income and Expense dated March 27, 2007, listed $2462 as his income from retirement and Social Security, and his Statement of Property did not indicate his ownership of any real property. Husband testified that his Current Spouse receives some money from her properties, and she gives Husband some money sometimes "for helping out with her properties," but his name is not on any deeds to any properties at this time. Husband's Statements of Income and Expense and Statements of Property from June 1998, June 2003, December 2004, and March 2007 were received by the trial court into evidence. Only those statements from June 1998 and December 2004 were included in the Legal File on appeal.

Wife presented the initial filings for approximately 75 landlord-tenant cases, which described properties and amounts of rent, for which Husband was the plaintiff and signed some of the affidavits. Husband's attorney objected on the grounds that the affidavits stated Husband was either the plaintiff or the agent, so they did not establish ownership. Husband testified that he was both. These exhibits were not included in the Legal File.

Husband testified that he bought the 2134 Obear property in 1986. Husband's other daughter, Erika Atkins (Atkins), testified that the Obear property was conveyed to her by Husband in 2001. However, she did not collect rent on the property, Husband did. When Atkins reconveyed the Obear property back to Husband in March 2004, Husband took a mortgage on the property. Husband testified he deeded the Obear property to his Current Spouse on September 29, 2004. Husband testified that he paid the mortgage on the Obear property.

Atkins also testified that she purchased property at 4355 and 4357 Finney from her father for $62,000 at the same time as she purchased the property on Obear. Husband paid Atkins's note on the property and also collected rents, although Atkins did not know how much rent. Atkins reconveyed the Finney property back to Husband in 2004, but she did not get any money from the sale. Atkins testified that these conveyances were made to improve her debt ratio and then her father's debt ratio. Property deeds to Atkins for both the Obear and Finney properties were admitted into evidence, but were not included in the Legal File.

Husband also testified that he bought 4656 Cottage in 1997, which was included in his dissolution decree in 1998, and he deeded the property to his Current Spouse on September 29, 2004. Husband also

transferred 4035 Cottage, 4355 Finney, and 5863 Minerva on the same date. On November 1, 2004, Husband transferred 2018 Kraft to his step-daughter Shamika Davis (Davis). Husband conveyed his property at 4030–32 Cote Brilliante to his nephew, Derrick Wings. Husband testified that he transferred 2134 Obear to his Current Spouse, but she did not pay any money to him because she was his wife. Husband transferred 4039 Pleasant to Current Spouse in September 2004, after he had inherited the property from his parents. Wife entered into evidence the quit-claim deeds of the properties to Current Spouse and his stepdaughter with certification from the Recorder of Deeds. These too were not included in the Legal File.

Wife presented into evidence affidavits and records from Ameren, Laclede Gas Company, and St. Louis Water Division on properties for which Husband was paying the utilities. Husband objected that these also did not prove ownership but merely showed who received the bill. Husband did not know why the water records showed the property at 5815 Cates was changed from his name to Current Spouse's name in January 2006. These affidavits and records were not included in the Legal File either.

Wife presented Husband's income tax returns for 2001 in which he indicated a loss of $11,000.78 for income from rental properties and adjusted income of $4771. The properties to which he attributed his income included those at 5863 Minerva, 4355–57 Finney, 1314 Walton, 4037 Pleasant and 4656 Cottage. He did not include the property at 4030–32 Cote Brilliante, even though it was titled in his name at the time. Husband testified that his ownership in the Cote Brilliante property was "in name alone" because he titled it in his name for his nephew, who just got out of prison and declared the rent on the property. Husband also did not include on his 2001 income tax return property on Walton, Cottage, Obear, and Kraft.

Wife presented Husband's income tax return for 2002, which showed a loss of $595 and a total adjusted income for that year of $6127 from wages, salaries, or tips, which Husband could not explain. Properties at 5863 Minerva, 4355 Finney, 4208 Cook, 1314 Walton, 4037 Pleasant, and 4656 Cottage were listed on the return. Additionally, the tax return listed Fay, property at which Current Spouse lived before she married Husband. Not listed on the return were properties at 1318–20 Walton, 4035 Cottage, 2134 Obear, or Kraft.

Wife also presented as evidence Husband's 2003, 2004, 2005, and 2006 income tax returns. On the 2004 income tax return, Husband listed one property as having been sold for $1. Husband could not explain this entry. On his 2005 income tax return, Husband had listed $31,383 earned from rental income. However, Husband still did not list the properties at 1318–20 Walton, 4035 Cottage, and 2134 Obear on his tax returns. Husband testified that these properties were rented in 2005. In 2006, Husband listed $6270 as his income, and included the property at 4656 Cottage, 5863 Minerva, 4208 Cook, Fay, 1314–16 Walton, Finney, and for the first time, property at 1318–20 Walton, and 4035 Cottage. Husband testified that he could not explain why some of the properties listed in 2006 were not listed in 2002 or 2004 because he did not own those properties, but his Current Spouse did. Husband presented no records to indicate how he arrived at the amounts indicated on his tax forms. The income tax returns were not included in the Legal File.

At the hearing, evidence was also presented that Husband has traveled to Ha-

waii, Australia, Egypt, Korea, Italy, Ecuador, and Jamaica since the 1998 dissolution decree. Husband testified that he and his Current Spouse owned a 2001 Cadillac, a 2001 truck, and a 2007 Mercedes.

### Trial Court's Judgment

The trial court entered its Findings, Conclusions, Order and Judgment on July 20, 2007. Husband filed a Motion to Reconsider and Amend Order and Judgment on August 3, 2007, and on August 15, 2007, Wife filed her Motion for Reconsideration and/or Amendment of the Modification of Judgment Entered on July 20, 2007.

The trial court amended its previous order and entered an Amended Findings, Conclusions, Order and Judgment (Judgment) as its final judgment on October 5, 2007. The trial court made detailed findings and conclusions from the evidence presented at the hearing.

In its Judgment, the trial court found that Husband's federal income tax returns do not reflect any capital gains or losses as a result of his transfer of ownership of properties to his nephew, Current Spouse, Atkins or Davis, and therefore, "each transfer of ownership by Husband did not involve, and was not supported by, consideration." Thus, the trial court found:

> each transfer of ownership by Husband to his nephew, his [Current Spouse], her daughter and his daughter was intended to disguise ownership of the said real properties, artificially reduce the monthly amount available to him to pay toward support of the minor child, and impede Wife's ability to collect from Husband the amounts payable by him under the said judgment of dissolution of marriage for support of the minor child.

The trial court considered the landlord-tenant cases presented into evidence and found that Husband introduced no credible evidence that he was the acting agent,

rather than the owner himself, of several properties that were not identified in Husband's income tax returns, and the trial court made a finding of the amounts of rent stated from those cases in 2001, 2002, 2003, 2004, 2005, and 2006. The trial court used utility records to identify which properties had service in Current Spouse's name for which periods of time, and also found that Husband introduced no credible evidence of ownership or that Current Spouse had an interest in the properties prior to their marriage.

Furthermore, the trial court found that Husband's transfer of ownership of significant properties to family members, including Current Spouse, failure to include on his federal income tax returns real properties in which he has an ownership interest and from which he received rental income, failure to identify the receipts and expenses for each property from which he receives rental income, and failure to disclose specific information from which the trial court could determine the assets owned and rental income received rendered it impossible to precisely calculate Husband's net rental income. The trial court stated that it "is satisfied, in part because of Husband's significant travel 'off the continent' since entry of the said judgment of dissolution of marriage, that Husband receives rental income between $5,000.00 and $7,000.00 per month which he has failed to disclose."

According to the Missouri Child Support Guidelines (Rule 88.01), the trial court found that from and after January 1, 2006, Husband is presumptively required to pay to Wife for child support $1,111.54 per month. From January 1, 2005, to December 31, 2005, the trial court found Husband is presumptively required to pay to Wife for child support $1,220.45 per month. From January 1, 2004, to December 31, 2004, the trial court found Husband is

presumptively required to pay to Wife for child support $1,077.57 per month. Finally, from January 1, 2003, to December 31, 2003, the trial court found Husband is presumptively required to pay to Wife for child support $936.30 monthly.

The trial court ordered Husband to pay to Wife an increased amount of child support, effective October 1, 2002, in the sum of $61,632, as follows:

- January 1, 2007—June 30, 2007: $6672 ($1112/month for 6 months)

- January 1, 2006—December 31, 2006: $13,344 ($1112/month at 12 months)

- January 1, 2005—December 31, 2005: $14,640 ($1220/month at 12 months)

- January 1, 2004—December 31, 2004: $12,936 ($1078/month at 12 months)

- October 1, 2002—December 31, 2003: $14,040 ($936/month at 15 months)

The trial court also ordered that any monthly benefits received by Wife from Husband's Social Security for Daughter shall satisfy, in whole or in part, Husband's obligation to pay child support.

In its Judgment, the trial court also found Wife's attorney reasonably charged Wife $150 per hour for 183 hours of service up to the evidentiary hearing, and had been paid $1500 by Wife. The trial court found that Wife is without sufficient earnings or assets with which to pay her attorney's fees, but Husband has sufficient income and assets to contribute to such payment. The trial court ordered Husband to pay $10,000 for Wife's attorney's fees.

The trial court also denied Wife's Motion to Set Aside Fraudulent Conveyances "for lack of jurisdiction over the subject matter."

This appeal follows.

## Points on Appeal

Husband raises two points on appeal, claiming that the trial court erred in 1) its calculations of Husband's income for the years 2003 through 2007 because the trial court's findings were not supported by substantial evidence and were against the weight of the evidence, and 2) finding that Husband had income and assets sufficient to pay Wife's attorney fees of $10,000 because the finding was not supported by substantial evidence and was against the weight of the evidence, and the order was an abuse of the trial court's discretion. For both points, Husband alleges that the evidence of Husband's purported rent income was imprecise, incomplete, and incapable of establishing the amount of income that actually was attributable to him. Husband further contends that the trial court's findings with respect to his purported rent income were speculative and based on unreasonable inferences drawn from evidence of family vacations, property conveyances, and unfounded assumptions regarding the existence and amount of unreported rent income. Husband argues that the court attributed all of the rent income reported on the Husband's joint tax returns to Husband, and failed to apportion a share of that income to Current Spouse. Additionally, in his second point, Husband claims that ordering Husband to pay $10,000 to Wife's attorney was arbitrary and unreasonable in view of the proven income of the parties.

In her cross-appeal, Wife raises two points. In her first point, Wife claims that the trial court erred in ordering that "any monthly benefits received by [Wife] from Social Security for [Daughter] as a result of [Husband's] disability shall satisfy in whole or in part the obligation of [Husband] to pay child support to [Wife]." Wife alleges that the trial court erroneously declared or applied the law leading to an

inequitable result under the facts of the case, which are distinguishable from the case law in this area. Wife further argues that the court order misstates and misapplies the law, and is out of harmony with the legislative intent of allowing a credit for Social Security disability benefits to offset a parent's obligation to pay child support, because the trial court allows the credit to offset Husband's child support obligation that stems from Husband's rental income, and not from Husband's lost income due to his disability.

In her second point on appeal, Wife argues that the trial court erroneously declared or applied the law in concluding that it lacked subject matter jurisdiction to set aside Husband's fraudulent conveyances of property to his spouse. In support of this point, Wife claims that all of the statutory requisites for subject matter jurisdiction were present under the facts before the trial court. First, a child support order was in place for a specified amount from Husband to Wife. Second, Husband's conveyance of property to his spouse, who was interpleaded as a third party and served, was made voluntarily and in anticipation of entry of a modification of that order of child support. Lastly, the trial court found that the "transfer of ownership by Husband did not involve, and was not supported by, consideration" and "was intended to disguise ownership of the said real properties, artificially reduce the monthly amount available to him to pay toward support of the minor child, and impede Wife's ability to collect from Husband the amounts payable by him under the said judgment of dissolution of marriage for the support of the minor child."

*Standard of Review*

The Court of Appeals will not disturb an order modifying a child support obligation unless there is no substantial evidence to support it, it is against the weight of evidence, or it erroneously declares or applies the law. *Forde v. Forde*, 190 S.W.3d 521, 527 (Mo.App. E.D.2006) (*citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We will interfere with the award only if the trial court abused its discretion by ordering an amount that is "against the logic of the circumstances" or is "arbitrary and unreasonable." *Id.* We view facts and reasonable inferences in the light most favorable to the trial court's decision and defer to the trial court's superior ability to determine the credibility of witnesses. *Abbott v. Perez*, 140 S.W.3d 283, 290 (Mo. App. E.D.2004).

*Discussion*

**A. Husband's Points on Appeal**

*1. Point I—Claim of Error in Modification of Child Support Award is Dismissed.*

■ Husband's first point challenges the trial court's modification of the child support award and its calculations of Husband's income for 2003 through 2007 for lack of substantial evidence.

Rule 81.12(a) states that the record on appeal "shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court." [1] Rule 81.12(e) states that "[a]ppellant is responsible for depositing all exhibits that are necessary for the determination of any point relied on."

---

**1.** All Rule citations are to Missouri Rules of Civil Procedure (2008) unless otherwise not- ed.

As the appellant challenging the sufficiency of the evidence from which the trial court determined his income and corresponding child support award, Husband has a duty, pursuant to Rule 81.12(a) to provide this Court with a full and complete record of all proceedings and evidence necessary to make a determination of all questions presented on appeal. *Oldham v. Oldham*, 223 S.W.3d 886, 887 (Mo.App. W.D.2007). Where, as here, the record does not contain all documents necessary for this court to determine the issue presented, our review is impossible and the claim of error must be dismissed. *Id.*

In contesting the child support award on appeal, Husband challenges the sufficiency of Wife's evidence of Husband's unreported rental income, property conveyances, family vacations, and the trial court's inferences drawn therefrom, and argues that the evidence does not support the trial court's calculations of Husband's income for the years 2003 through 2007. At trial, Wife presented evidence of income and expense statements, property statements, income tax returns, property deeds, landlord-tenant case filings, and utility records, all of which purportedly related to Husband's rental income. Husband failed to include any of this evidence in the record on appeal or his appendix. Without the availability of these exhibits, it is impossible for this Court to properly assess whether the trial court's award of child support was sufficiently supported by the record. We are compelled, therefore, to dismiss Point I of Husband's appeal.

Even if we were to review Husband's first point on appeal, the live testimony of witnesses presented at the evidentiary hearing indicates that the trial court considered a wealth of information to support its finding and conclusions and make a credibility determination against Husband,

to which we defer. *Abbott*, 140 S.W.3d at 290. Viewing the facts and reasonable inferences of Husband's unreported rental income and conveyances in the light most favorable to the trial court's decision, we are not surprised by Husband's failure to acknowledge the evidence presented against him at trial.

*2. Point II—Trial Court Was Within its Discretion in Awarding Wife's Attorney's Fees.*

In Husband's second point, he challenges the trial court's decision finding that he had sufficient income and assets to pay Wife's attorney's fees, and ordering him to pay $10,000 to Wife's attorney. We disagree with Husband and find substantial evidence in the record supports the trial court's finding.

The trial court has broad discretion to award attorney's fees. *Clark v. Clark*, 101 S.W.3d 323, 330 (Mo.App.2003). Section 452.355 RSMo. (2000)[2] provides that the financial resources of the parties must be considered, as well as the "merits of the case and the actions of the parties during the pendency of the action ..." We will not disturb the trial court's award of attorney's fees based on these considerations absent an abuse of discretion. *Clark*, 101 S.W.3d at 330. An abuse of discretion occurs where the trial court's award was so arbitrary and unreasonable and against the logic of the circumstances as to shock the sense of justice and indicate that the trial court did not carefully consider the decision. *Id.* at 331.

Here, despite Husband's failure to provide the documentary evidence in the legal file or appendix, there exists sufficient evidence in the record of the disparity of the financial resources of Wife and Husband. Wife testified that her income for 2006 was

**2.** Unless otherwise indicated, all subsequent statutory citations are to RSMo 2000.

$36,414 and Husband testified that in 2006 he received $2175 monthly from Bi–State, the Veterans Administration, and Social Security, for a yearly income of $26,100. However, the record before us contains the transcript of the proceedings and supports the trial court's finding that Husband earned a significant amount of income from rental property, which he attempted to underreport and hide altogether by conveying property to Current Spouse and other relatives. When questioned, Husband confirmed that he reported rental income of $31,383 on his 2005 income tax return. Husband's rental income and properties mysteriously disappeared before the date of the hearing on Wife's Motion to Modify. Husband attested to his ownership of a significant number of properties prior to Wife's Motion to Modify, and offered testimony to explain the transfer of said properties. Husband's daughter testified as to the transfer of properties between her and Husband. The trial court found Husband lacked credible evidence to refute ownership of these properties, and imputed additional rental income to Husband.

We find that sufficient evidence exists in the record before us from which the trial court could reasonably conclude that Husband had greater financial resources than Wife. Additionally, we find that Wife's attorney's fees of $150 per hour for 183 hours, totaling more than $27,000, was reasonable considering the lengthy history of this case. Given the differing financial positions of the parties, we cannot conclude that the trial court abused its discretion in awarding Wife $10,000 in attorney's fees—less than half of her attorney's fees—to be paid by Husband. Point II is denied.

## B. Wife's Points on Appeal

*1. Point I—Social Security Credit is Proper.*

Turning to Wife's cross-appeal, her first point claims that the trial court erred in ordering that "any monthly benefits received by [Wife] from Social Security for [Daughter] as a result of [Husband's] disability shall satisfy in whole or in part the obligation of [Husband] to pay child support to [Wife]." Wife alleges that the trial court's order erroneously declares or applies the law and leads to an inequitable result under the facts of the case. Claiming that the facts of this case are distinguishable from the case law in this area, Wife argues that allowing the Social Security credit is out of harmony with the legislative intent in allowing a credit for Social Security disability benefits to offset a parent's obligation to pay child support for his or her minor child. Specifically, Wife argues that the trial court has misapplied or misstated the law because the trial court is allowing the Social Security credit to offset Husband's child support obligation that is derived from Husband's rental income, and not from Husband's lost income due to his disability. Despite our understanding of Wife's frustration with the lack of financial support for Daughter from Husband over the past years, our understanding and empathy cannot supplant our application of the relevant principles law. For this reason, we disagree with Wife's first point on appeal.

Here we find applicable the Missouri Supreme Court's decision in *Weaks v. Weaks,* 821 S.W.2d 503 (Mo. banc 1991). In determining whether a court should include Social Security disability benefits paid due to the non-custodial parent's disability in determining a non-custodial parent's child support obligation, the *Weaks* Court stated, "[t]he focus of the inquiry should be whether the purpose of child support is satisfied by the receipt of the social security benefits." The Court noted

that, in that case, "[t]he purpose of social security disability payments [was] to replace income lost due to the recipient's inability to work." *Id.* at 506. The Court reasoned that "[t]he benefits paid to the children are derived from funds 'earned' by the contributor." *Id.* While the Court recognized that in some instances "a recipient of disability benefits *might have independent sources of income,* commonly the disabled person is deprived of the only means of support upon becoming disabled." *Id.* (emphasis added). Thus, the Court determined that "it is inequitable to withhold a credit against a child support obligation[,]" where "[t]he parent charged with the support obligation may have no ability to satisfy that obligation other than through the governmental disability payments, which were effectively generated by contributions from wages while working." *Id.*

We are presented with an issue of first impression as to whether a recipient of disability benefits, who has "independent sources of income," which the Supreme Court referred to in *Weaks,* is entitled to the same credit for his non-custodial child support obligation as another recipient of disability benefits who has no other sources of income. Building on the rationale of *Weaks,* we find that equity compels a congruent conclusion. Even when the recipient of disability benefits has another source, or sources of income, the benefits paid to the children are still derived from funds "earned" by the contributor. The disability benefits are a means of the recipient's support, effectively created by contributions from wages while working, and although the parent charged with the support obligation may have other sources of income, he or she may need the governmental disability payments to satisfy such obligation.

Moreover, when a non-custodial parent has other sources of income in addition to the disability payments, equity requires that the disability payments be considered with the non-disability sources of income when determining a parent's child support obligation. In determining the proper amount of child support, the trial court balances the needs of the children and the ability of the non-custodial parent to pay. *Wise v. Crawford,* 695 S.W.2d 487 (Mo. App.1985). The non-custodial parent's disability payment reinforces the non-custodial parent's ability to pay child support, and should be included when making child support income calculations. Without such consideration, the non-custodial parent's total income is decreased and the child support obligation may be diminished as well. Given these equitable considerations, if the disability payment must be considered toward a parent's income, the payment to the child must also be credited.

Here, the purpose of the Social Security benefits received by Wife for the benefit of Daughter as a result of Husband's disability is to replace income lost due to Husband's inability to work, even if Husband finds other ways of supplementing his income. The benefits are derived from Husband's Social Security account, and it is Husband who faces "a *reduction* of income, financial uncertainty, physical or mental impairment and other attendant consequences of the disability." *Adams v. Adams,* 108 S.W.3d 821, 830 (Mo.App. W.D.2003) (emphasis added), *quoting Weaks,* 821 S.W.2d at 506. Accordingly, it would be inequitable to withhold a credit against Husband's support obligation because that obligation was met through the payment of funds Husband previously contributed to the Social Security system.

Additionally, we note that the trial court considered Husband's Social Security payment as part of his total income, in addi-

tion to Husband's imputed rental income and his monthly payments from Bi–State Transit and Veterans Administration. The trial court calculated Husband's child support obligation based upon that *total income,* which included the Social Security payments. Had the court excluded Husband's Social Security payments from consideration, Husband's income calculation would have reflected a lower income and a reduced child support award. The trial court acted in fairness and in accordance with the law when it found that any monthly benefits received by Wife from Social Security for Daughter as a result of Husband's disability shall satisfy in whole or in part Husband's obligation to pay child support to Wife.

Finding no error by the trial court, Point I of Wife's appeal is denied.

*2. Point II—Trial Court Had Subject Matter Jurisdiction to Set Aside Fraudulent Conveyances.*

■ In her second point, Wife argues that the trial court erroneously declared or applied the law in concluding that it lacked subject matter jurisdiction to set aside Husband's fraudulent conveyances of property to his Current Spouse. Wife claims that all of the statutory requisites for subject matter jurisdiction were present under the facts before the trial court. Wife suggests that the child support order entered in the original dissolution action was for a specified amount due from Husband to Wife, and constitutes an obligation of Husband under Section 454.525.3. Wife further argues that Husband conveyed various properties to his spouse, who was interpleaded as a third party and served, was made voluntarily, and that the transfers were made in anticipation of entry of a modification of that order of child support. Lastly, Wife argues that trial court had subject matter jurisdiction under Section 454.525.3 because the trial court found

the transfer of ownership of properties by Husband was unsupported by consideration, intended to disguise Husband's ownership of his properties, artificially reduce the monthly amount available to Husband to pay toward child support, and impede Wife's ability to collect from Husband the child support amounts payable by him under the judgment of dissolution of marriage. We agree that the trial court was vested with subject matter jurisdiction under Section 454.525.3 to set aside the Husband's fraudulent conveyances.

■ When a trial court's authority to adjudicate a matter is determined solely by statute, the court's jurisdiction over that matter depends on strict adherence to the statutory requisites. *McMinn v. McMinn,* 884 S.W.2d 277, 280 (Mo.App. W.D.1994). When a trial court's decision regarding the extent of its jurisdiction depends on an interpretation of law, however, appellate review is *de novo. Mo. Soybean Ass'n v. Mo. Clean Water Comm'n,* 102 S.W.3d 10, 22 (Mo. banc 2003). In a case tried without a jury, the trial court's rulings on questions of law should be affirmed unless the court erroneously declared or applied the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Within our state's Enforcement of Support Law for Child Support, Section 454.525.3 states, in pertinent part, as follows:

Any party owed a support obligation may maintain an action for the purpose of setting aside a fraudulent conveyance by filing an appropriate motion in the cause of action that produced the support order.... Where the party seeking to set aside the conveyance presents evidence that the conveyance was made voluntarily and without adequate consideration or in anticipation of entry of enforcement of a judicial or administra-

tive support order, a presumption shall arise that the conveyance was made with fraudulent intent. Upon such a showing, the burden of proving that the conveyance was made in good faith shall rest with the obligor.

The statute also defines "obligor" as "a person who owes a duty of support as determined by a court or administrative agency of competent jurisdiction." Section 454.525.1.

The trial court in its Judgment did not explain its reason for finding a lack of subject matter jurisdiction. Husband argues that the trial court lacked subject matter jurisdiction over Wife's Motion to Set Aside Fraudulent Conveyances because Section 454.525.3 requires that the conveyances at issue be made to avoid paying a "support obligation," and that there was no evidence that Husband failed to pay any "support obligation." Husband states that he was current with his child support payments at the time Wife filed her Motion to Set Aside Fraudulent Conveyances, and therefore, Wife was not "owed a support obligation" under the statute. Husband contends that the support obligation upon which Wife based her April 14, 2006 Motion to Set Aside Fraudulent Conveyances did not exist until the entry of the Judgment by the trial court on July 20, 2007, which modified Husband's support obligation to an increased amount. The plain meaning of the phrase "owed a support obligation" is determinative of our decision. To adopt Husband's position, we would be required to read into the statute a requirement that any party owed an "unsatisfied" support obligation may maintain an action to set aside a fraudulent conveyance by filing an appropriate motion. We decline to expand the plain language of Section 454.525.3. We respectfully disagree with the trial court's finding that it lacked jurisdiction to rule on

Wife's Motion to Set Aside Fraudulent Conveyances.

 Without any Missouri case law construing Section 454.525, we are left to interpret this statute as its drafters intended. "The seminal rule of statutory construction directs this Court to determine the true intent of the legislature, giving reasonable interpretation in light of the legislative objective." *ACME Royalty Co. v. Dir. of Revenue*, 96 S.W.3d 72, 74 (Mo. banc 2002). Construction of statutes should avoid unreasonable or absurd results. *Murray v. Mo. Highway and Transp. Comm'n*, 37 S.W.3d 228, 233 (Mo. banc 2001). Additionally, the Court has no authority to read into the statute a legislative intent contrary to the intent made evident by the plain language. *Kearney Special Rd. Dist. v. County of Clay*, 863 S.W.2d 841, 842 (Mo. banc 1993).

Our review of Section 454.525 finds no language that requires an "obligor," who is defined as "a person who owes a duty of support," to be delinquent on payments of his or her support obligation before a motion to set aside fraudulent conveyance may be filed. Moreover, we will not read such a requirement into the statute, which, unlike several other domestic relations statutes, specifically omits a requirement of delinquency. Had the legislature intended to limit the application of Section 454.525.3 to only those situations where a support obligation was past due or unsatisfied, it would have stated so. For example, in Section 454.420, the legislature specifically referred to "unpaid support obligations" that must be enforced. Additionally, Section 454.450 addresses any "support delinquency owed" to mean an amount overdue, rather than stating a support "obligation" owed. Even more manifest in its intention to address delinquent support is Section 454.512, which states the name of any noncustodial par-

ent "who is *delinquent* in the payment of support and the amount of *overdue* support owed by such parent" may be reported to consumer reporting agencies. (emphasis added). Finally, Section 454.520 addresses the interest rate on "delinquent child support and maintenance payments."

Section 454.525.3 does not qualify or limit the definition of a party "owed a support obligation" as a party "owed an overdue support obligation," or a party "owed a support delinquency," or a party "owed an unpaid support obligation." A plain reading of the statute neither requires nor promotes a debt or delinquency before giving the custodial parent to whom child support is due the claim of right for which this statute allows. To find a "debt" or "delinquency" requirement, we would be required to add a qualification to the party "owed a support obligation" that the statute does not contain, and that the legislature showed, by omitting such language in this section of the statute, that it did not intend. "Although not strictly a canon of construction, courts avoid interpreting statutes to include qualifiers where '[s]uch an interpretation impermissibly adds language to the statute.'" *BHA Group Holding, Inc. v. Pendergast,* 173 S.W.3d 373, 379 (Mo.App. W.D.2005), *quoting Kincade v. Treasurer of State of Mo.,* 92 S.W.3d 310, 312 (Mo.App. E.D.2002).

Husband owed a support obligation to Wife from the moment the initial order and judgment requiring payment of child support was entered. Under that initial support order, Husband was required to pay, and Wife was entitled to demand, a specific payment every month. To say that a party "owed a support obligation" requires the existence of a delinquent or outstanding debt is not supported by the plain language of the statute. Moreover, such a reading would frustrate the purpose of the statute and lead to an unreasonable result. Under Husband's logic, an obligor could prevent an estranged spouse from bringing any action to set aside fraudulent conveyances simply by keeping current on his or her child support obligations while continuing to make fraudulent conveyances "in anticipation of entry or enforcement" of a future judicial support order. The purpose of the statute is to prevent parents from transferring properties even "in anticipation" of an increased child support obligation.[3]

Here, we read Section 454.525 to refer to Wife, who was "owed a support obligation" by virtue of the October 1998 dissolution decree ordering that "[Wife] have and recover of [Husband] the sum of $577.00 per month the said minor unemancipated child aforesaid as and for support, commencing the 1st day of October, 1998." Simply because Daughter, and not Wife, had received the latest Social Security payment did not void Wife's status as an obligee who was "owed a support obligation" from Husband.

Further, subject matter jurisdiction over child support orders is governed by the Missouri codification of the Uniform Interstate Family Support Act (UIFSA). *State ex rel. Brantingham v. Grate,* 205 S.W.3d

---

**3.** Husband argues that allowing a Motion to Set Aside Fraudulent Conveyances absent a requirement of a past due support obligation increases the possibility of increased abuse by parties seeking an increase in child support, and will cause significant hardships to parties engaged in legitimate real estate transactions or estate planning. Husband's argument presents legitimate concerns as domestic litigation sometimes finds the parties embroiled in deeply emotional conflicts that can lead to an abuse of the legal process. However, the potential for abuse by some parties cannot overcome the plain and clear language of Section 454.525.3. The legislature has the power to include the requirement of delinquency in Section 454.525.3 as it has in other child support related statutes.

317, 320 (Mo.App. W.D.2006). UIFSA is codified in Chapter 454 of the Missouri statutes and became effective in Missouri in 1997. Section 454.850; *Brantingham,* 205 S.W.3d at 320. By issuing the original child support order in the October 1998 dissolution decree, Missouri established continuing, exclusive jurisdiction over the order. *Brantingham,* 205 S.W.3d at 320. Section 454.525 further requires that the "party owed a support obligation" must file "an appropriate motion in the cause of action that produced the support or- der...." Wife filed her Motion to Set Aside Fraudulent Conveyances, along with her Motion to Modify the original child support order, in the cause of action that produced the original child support order in the Circuit Court of St. Louis City. Such filing was proper.

We further find that because the trial court made explicit findings of fact that Husband's conveyances were made volun- tarily and without adequate consideration, the burden of proving that the convey- ances were made in good faith was proper- ly shifted to Husband. The trial court found that Husband failed to meet that burden. We hold that the trial court had the subject matter jurisdiction to take its findings one step further, and declare Hus- band's conveyances were made with a fraudulent intent. The trial court should have then set aside those conveyances in accord with its findings.

Point II of Wife's appeal is granted. We reverse the trial court's findings that it did not have subject matter jurisdiction to set aside Husband's fraudulent convey- ances. We remand the case with di- rections to enter a judgment setting aside Husband's fraudulent conveyances. *Stone v. Farm Bureau Town & Country Ins. Co. of Mo.,* 203 S.W.3d 736, 749 (Mo.App. S.D. 2006).

*Conclusion*

The trial court's judgment is affirmed in part and reversed in part.

GLENN A. NORTON, and PATRICIA L. COHEN, JJ., Concur.