

# SUPREME COURT OF MISSOURI
## en banc

JENETTE KONOPASEK, )
)
Appellant, )
)
v. )   No. SC99816
)
DOUGLAS and LAURA KONOPASEK, )
)
Respondents. )

*Opinion issued June 27, 2023, and modified on the Court's own motion August 15, 2023*

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY
The Honorable Renee Tiffany Yarnell, Judge

Jenette Konopasek appeals the judgment of the Taney County circuit court dismissing her petition seeking relief from fraudulent transfers Douglas Konopasek made to hinder collection of her judgments against him. She claims the circuit court erred in dismissing her petition because she alleged facts that, if true, demonstrate she is a creditor of Douglas[1] and he made two transfers with the actual intent to hinder, delay, or defraud her and, regarding one of the transfers, without receiving a reasonably equivalent value in exchange for the transfer when he was insolvent or became insolvent as a result of the transfer. The Court holds Jenette adequately alleged facts that, if taken as true, entitle her

---

[1] Because Jenette, Douglas, and Laura share the Konopasek surname, this opinion hereinafter refers to the parties by their first names for clarity. No disrespect or undue familiarity is intended.

1

to relief under the Uniform Fraudulent Transfers Act ("UFTA"), sections 428.005 to 428.059.[2]  Therefore, the circuit court's judgment is reversed, and the case is remanded.

**Factual and Procedural Background**

In January 2013, Jenette obtained a judgment in the amount of $7,288, with interest accruing at the statutory rate, against Douglas in the Clay County circuit court.  In December 2015, Douglas was involved in an automobile accident in the course of his employment and, as a result of the accident, he accrued a workers' compensation claim against his employer and a personal injury claim against a third party.  The following August, Douglas and Laura Konopasek married.

In May 2018, Douglas settled his workers' compensation claim for $49,771.73 and deposited the settlement proceeds into a bank account he and Laura hold as tenants by the entirety.  Then, in June 2018, he settled his personal injury claim for $235,336.49 and deposited the settlement proceeds into the same bank account held as tenants by the entirety.

In March 2020, Jenette obtained a second judgment against Douglas in the circuit court of Benton County in the amount of $12,564.93.[3]  In March 2021, she filed a petition against Douglas and Laura in the Stone County circuit court seeking, among other things, to avoid the transfers Douglas made into the  tenancy-by-the-entirety bank account and attach any and all accounts to which any part of the settlement proceeds were transferred

---

[2] All statutory citations are to RSMo 2016.
[3] The petition alleges post-judgment interest accrued on the Clay County and Benton County judgments, bringing the respective balances to $12,643.18 and $13,827.38, as of March 17, 2021.

2

to the extent necessary to satisfy her judgments. Douglas and Laura filed a motion to dismiss asserting venue was improper in Stone County because they resided in Taney County, citing section 508.010(2). The circuit court construed the motion to dismiss to be a motion for change of venue, which it sustained, and transferred the case to Taney County.

After the case was transferred, Jenette filed an amended petition, and Douglas and Laura filed a motion to dismiss. In their motion, Douglas and Laura asserted Jenette failed to state a claim upon which relief can be granted because she: did not plead the elements of fraud with particularity; failed to allege facts regarding the "necessary elements" (badges of fraud) in section 428.024.2(2); failed to allege a "specific conveyance"; and "fail[ed] to specific [sic] any evidence do you have [sic] that any transfer was made with an intent to hinder, delay or defraud creditors." The motion also averred that, pursuant to section 454.525.3, Jenette was required to file her action in the prior Clay County case because the Clay County judgment included a support obligation.

The circuit court sustained the motion without specifying the grounds for its ruling and entered a judgment dismissing Jenette's petition without prejudice. Jenette appealed. This Court granted transfer after opinion by the court of appeals. Mo. Const. art. V, sec. 10.

**Final Judgment**

The Court first addresses Douglas and Laura's challenge to this Court's appellate jurisdiction. The "right to appeal is purely statutory." *Butala v. Curators of Univ. of Mo.*, 620 S.W.3d 89, 93 (Mo. banc 2021). Douglas and Laura claim the dismissal of Jenette's

3

petition without prejudice is not a final judgment; therefore, section 512.020(5) does not authorize this appeal.

Jenette appeals pursuant to section 512.020(5), which authorizes an aggrieved party to appeal from any final judgment in a case. "[T]his Court occasionally has referred to a 'general rule that a dismissal without prejudice is not a final judgment and, therefore, is not appealable.'" *Naylor v. Senior Citizens Hous., LP v. Side Constr. Co.*, 423 S.W.3d 238, 242 (Mo. banc 2014) (quoting *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 (Mo. banc 1997)). "Nonetheless, an appeal from a dismissal without prejudice can be taken where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum." *Avery Contracting, LLC v. Neihaus*, 492 S.W.3d 159, 162 (Mo. banc 2016) (internal quotation omitted).

Douglas and Laura assert the Court must find the circuit court's dismissal without prejudice is not a final judgment because the petition was dismissed for improper venue and Jenette can refile her suit in the proper venue without changing the allegations. They argue, under section 454.525.3, as interpreted in *Wallace v. Wallace*, 269 S.W.3d 469, 481 (Mo. App. 2008), the Taney County circuit court lacked jurisdiction over Jenette's claims. They claim the only circuit courts with jurisdiction over her claims for fraudulent conveyance are those in Clay and Benton counties because the Clay and Benton County judgments produced child support orders. They assert the circuit court dismissed Jenette's

claims for lack of jurisdiction because they were not filed in the proper circuit court and "a dismissal due to lack of jurisdiction is not a final appealable order."[4]

The Taney County circuit court did not lack jurisdiction over Jenette's claims, however, so its dismissal could not properly have been a dismissal for lack of jurisdiction. In evaluating the jurisdiction of the circuit courts, this Court has held, "Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009). In this case, the circuit court had personal jurisdiction over Douglas and Laura and subject matter jurisdiction over the substantive issues in this civil case. Mo. Const. art. V, sec. 14 ("The circuit courts shall have original jurisdiction over all cases and matters, civil and criminal.").[5]

Douglas and Laura rely on section 454.525.3, which provides in part:

> Any party owed a support obligation may maintain an action for the purpose of setting aside a fraudulent conveyance by filing an appropriate motion in the cause of action that produced the support order, or if the order was established pursuant to sections 454.440 to 454.510, by filing a petition in the court in which the order was filed pursuant to section 454.490.

---

[4] In their brief, Douglas and Laura characterize their assertion in their motion to dismiss and argument at the hearing on the motion as asserting "the Benton County or Clay County courts, which issued the support orders [Jenette] is suing for payment on, have *exclusive jurisdiction* over [Jenette's] claims pursuant to section 454.525[.3]." (Emphasis added). This assertion is not supported by the record. Douglas and Laura asserted in their motion to dismiss that Jenette was required by section 454.525.3 to file her petition in the Clay County case that produced a support order. At the hearing on their motion to dismiss, however, Clay County was not mentioned, and Douglas and Laura argued the case should "go back to Benton County."

[5] To the extent *Wallace*, 269 S.W.3d at 481, held section 454.525.3 establishes the subject matter jurisdiction of circuit courts over actions to set aside fraudulent conveyances, it was overruled by *Wyciskalla*. "[T]he subject matter jurisdiction of Missouri's courts is governed directly by the state's constitution." *Wyciskalla*, 275 S.W.3d at 253.

5

The statute, however, relates to venue, not jurisdiction, and has no relevance to this Court's jurisdiction over Jenette's appeal.[6]

Although Jenette's case was dismissed without prejudice, the circuit court's judgment of dismissal on any of the other grounds in the motion to dismiss had the practical effect of terminating the litigation in the form cast. As Douglas and Laura conceded during oral argument, Jenette could not refile her claims without changing her allegations and there was no pleading defect she could correct with subsequent action. Consequently, the circuit court's judgment is a final, appealable judgment under section 512.020(5), and this Court has jurisdiction over this appeal.

---

[6] Douglas and Laura also argue Jenette fails to invoke this Court's jurisdiction because her brief fails to comply with Rule 84.04. Specifically, they contend her jurisdictional statement fails to set forth facts demonstrating this Court's jurisdiction and her points relied on fail to state the legal reasons for her claims of error. The briefing requirements of Rule 84.04 are not jurisdictional; otherwise, the Court could not exercise its discretion to review claims despite briefing deficiencies. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 508 (Mo. banc 2022) ("Like the court of appeals, this Court has discretion to review noncompliant points gratuitously, overlooking technical deficiencies in the points relied on, when the deficiencies do not impede review on the merits."); *see also Noyes v. Stewart*, 235 S.W.2d 333, 338 (Mo. banc 1950) (finding the facts presented in the brief invoked the Court's jurisdiction notwithstanding the absence of a jurisdictional statement). Additionally, Jenette's jurisdictional statement complies with Rule 84.04(a)(2) because it states this Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution in that the Court granted transfer of the appeal. Rule 84.04(b)'s requirement that the jurisdictional statement set forth factual data demonstrating the basis for jurisdiction under "article V, section 3 of the Missouri Constitution" does not apply when jurisdiction is based in article V, section 10. Further, the Court finds Jenette's points relied on comply with Rule 84.04(d) because they adequately identify the challenged circuit court ruling, state the legal reasons for the claim of error, and explain why the legal reasons support the claim for relief.

## Standard of Review

When a circuit court sustains a motion to dismiss, this Court reviews the circuit court's ruling *de novo*. *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019). When considering whether a petition states a claim upon which relief can be granted, the Court reviews the plaintiff's petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause of action that might be adopted in th[e] case." *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001). In so doing, the "Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *R.M.A.*, 568 S.W.3d at 424.

Although the circuit court did not specify the grounds for its ruling, the "dismissal will be affirmed if justified on any ground advanced in the motion to dismiss." *Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W.3d 307, 310 (Mo. banc 2019). But, "[i]f the motion to dismiss cannot be sustained on any ground alleged in the motion, the trial court's ruling will be reversed." *Goldsby v. Lombardi*, 559 S.W.3d 878, 881 (Mo. banc 2018).

## Petition States Claim for Relief

In her first point, Jenette claims the circuit court erred in dismissing her petition without prejudice because she pleaded a claim for relief under section 428.024.1(1). Specifically, she alleges she obtained two judgments against Douglas that he has not paid; Douglas accrued two claims for damages that he later settled for approximately $285,000; Douglas transferred his interest in the settlement proceeds when he deposited those proceeds into a bank account he and Laura held as tenants by the entirety; and he made the

transfer with the intent to hinder, delay, or defraud her. Jenette argues, in opposition to the four remaining grounds raised in the motion to dismiss, she was not required to plead fraud with greater particularity or allege facts supporting the existence of several badges of fraud to state a claim for fraudulent transfer. She further argues she adequately alleged a "transfer" and that Douglas made the transfer with the actual intent to hinder, delay, or defraud her from collecting her judgments against him.

Jenette pleads claims in her petition pursuant to section 428.024.1(1), which states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: With actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Under the statute's plain language, Jenette has a claim for fraudulent transfer against Douglas if she alleges facts that, if true, establish she is Douglas's creditor and Douglas made a transfer with the actual intent to hinder, delay, or defraud her as his creditor.

In her petition, Jenette alleged she obtained two judgments against Douglas. The first was the 2013 Clay County judgment for $7,288. The second was the 2020 Benton County judgment for $12,564.93. She further alleged that, as a result of a 2015 vehicle accident, Douglas accrued a workers' compensation claim and a personal injury claim and such claims were Douglas's "assets." She also alleges Douglas married Laura in 2016 and, in 2018, he settled his claims for $49,771.73 and $235,336.49, respectively. Jenette then alleged he made a transfer when he deposited the settlement proceeds into a bank account he and Laura hold as tenants by the entirety. In her petition, she alleged the amounts of the settlement proceeds and the dates the proceeds were deposited into a specific bank account

8

held by Douglas and Laura as tenants by the entirety. She alleged Douglas and Laura were the transferees and Douglas made the transfer with the intent to hinder, delay, or defraud her.

Douglas and Laura challenged the sufficiency of these allegations to state a claim for relief under section 428.024.1(1) of the UFTA only with regard to whether the allegations establish a "transfer" occurred and whether she adequately pleaded Douglas had an actual intent to hinder, delay, or defraud her as his creditor. As to whether Jenette sufficiently pleaded a "transfer," section 428.009(12) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." When Douglas deposited his settlement checks into the bank account he and Laura hold as tenants by the entirety, the settlement proceeds no longer qualified as "assets" under the UFTA. An asset "does not include . . . [a]n interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." Section 428.009(2)(c). Therefore, Douglas disposed of or parted with – i.e., transferred – his interest in assets – the settlement proceeds – when he deposited the settlement checks into the bank account he and Laura hold as tenants by the entirety because, thereafter, the settlement proceeds are not assets subject to process by Jenette to collect the judgments she has against only Douglas.

Nevertheless, Douglas and Laura claim Jenette's allegations demonstrate Douglas did not make a transfer because "disposing of" an asset means "to transfer to the control of

9

another" and "parting with" an asset means "to give up possession or control of [it]." They argue, because Douglas retains possession and control over the funds in the account held with Laura as tenants by the entirety, he did not make a transfer, as a matter of law.

The plain language of the provisions of the UFTA does not support their position. A debtor's continued physical possession or control of assets does not determine whether a transfer occurred. As previously stated, the UFTA defines "transfer" to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or *an interest in an asset . . . .*" Section 428.009(12) (emphasis added). While Douglas may not have disposed of or parted with his control over the funds, he did dispose of or part with his individual *interest* in those funds so that the funds are no longer subject to legal process by Jenette, who is a judgment creditor of only Douglas. In fact, the UFTA expressly recognizes there will be circumstances, such as here, in which the debtor disposes of or parts with an interest in property (and, as a consequence, makes a transfer) and yet retains possession or control of the property after the transfer is made. Section 428.024.2(2) identifies a debtor's "retained possession or control of the property transferred *after the transfer*" as an indication of fraud. (Emphasis added). Therefore, taking the allegations of Jenette's petition as true, Douglas made a transfer under the plain and ordinary meaning of section 428.009(12), notwithstanding the fact he retained possession or control of the settlement proceeds deposited in the bank account he holds with Laura as tenants by the entirety.[7]

---

[7] Douglas and Laura argue for the first time on appeal that no transfer was made because the settlement proceeds were marital property by virtue of being acquired during the

The remaining ground in Douglas and Laura's motion to dismiss on which the circuit court could have dismissed Jenette's petition is Douglas and Laura's assertion Jenette did not adequately plead Douglas's actual intent to hinder, delay, or defraud her as his creditor. In her petition, Jenette alleged Douglas transferred the assets "with the actual intent to hinder, delay and/or defraud Jenette Konopasek from collecting on the Clay County Judgment and the Benton County Judgment." Nonetheless, Douglas and Laura assert case precedent requires her to plead facts supporting the existence of several badges of fraud in order to state a claim and Rule 55.15 requires her to plead fraud with greater particularity.

Douglas and Laura's assertion that Jenette is required to plead facts demonstrating the existence of several badges of fraud relies on the court of appeals' holding in *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 389-90 (Mo. App. 2010). In *Birkenmeier*, the court held, "For a transfer to be found fraudulent, several indicia of fraud must be shown." *Id.* at 389. "More than one badge of fraud must be present." *Id.* It affirmed the dismissal of a plaintiff's UFTA claim because the plaintiff failed to plead facts supporting the existence of several badges of fraud. *Id.* This Court is not persuaded the UFTA requires a plaintiff to plead facts demonstrating the existence of several badges of fraud or "factors" in section 428.024.2.

marriage. An individual's legal interest in property that is subject to legal process to pay a debt is not determined by the property's character as marital or non-marital for purposes of distribution in a dissolution proceeding. *See* section 452.330.3 (providing all property acquired during the marriage is presumptively marital "regardless of whether title is held individually or by the spouses in some form of co-ownership").

11

Section 428.024.1(1) requires a plaintiff to show "the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." There rarely is direct evidence of actual intent, but "[i]t has always been held that fraud may be proven by circumstantial evidence, if that evidence affords a clear inference of fraud, and amounts to more than a mere suspicion or conjecture." *Herrold v. Hart*, 290 S.W.2d 49, 55 (Mo. 1956). "[A] concurrence of circumstances, or of 'badges of fraud,' may warrant an inference of fraud, although each such circumstance may, in itself, be trivial." *Id.* This Court's prior decisions identify several facts or circumstances recognized as indicia or "badges" of fraud, including:

> A conveyance in anticipation of suit; a conveyance to near relatives; inadequacy of consideration; unusual clauses in instruments or unusual methods of transacting business; transfer of all or nearly all of a debtor's property; insolvency; retention of possession by the debtor; the failure to produce available explanatory or rebutting evidence when the circumstances attending the transfer are suspicious.

*Bostian v. Bono*, 322 S.W.2d 813, 815 (Mo. 1959). But such recitations of examples of badges of fraud are not exhaustive. "Badges of fraud are as infinite in number and form as are the resources and versatility of human artifice." *Matz v. Miami Club Rest.*, 108 S.W.2d 975, 979 (Mo. App. 1937).

The UFTA codifies a non-exhaustive list of such "factors" that "may" be considered in determining a debtor's actual intent. Section 428.024.2. Those factors are:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

12

(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Section 428.024.2(1)-(11).

Contrary to Douglas and Laura's assertion, no language in section 428.024.2(1)-(11) requires a plaintiff to plead and prove several badges of fraud to establish a debtor's intent. Indeed, although it is rare, it is possible a plaintiff may prove the debtor's intent by direct evidence of the debtor's state of mind. The badges of fraud, including the factors recognized in section 428.024.2(1)-(11), represent means of proving, by circumstantial evidence, the ultimate fact of the debtor's actual intent. *See Bank of New Cambria v. Briggs*, 236 S.W.2d 289, 291 (Mo. 1951) (acknowledging the common law badges of fraud represent circumstantial evidence of fraud). When a concurrence of several badges of fraud is shown, a trier of fact may be warranted in inferring actual intent to hinder, delay, or defraud. *See Allison v. Mildred*, 307 S.W.2d 447, 454 (Mo. 1957). The badges of fraud, therefore, are recognized evidentiary facts a plaintiff may use to establish the ultimate fact – the debtor's actual intent to hinder, delay, or defraud creditors. *See generally Scheibel v. Hillis*, 531 S.W.2d 285 (Mo. banc 1976) (discussing the distinction between ultimate facts and proof of "the facts or circumstances by which the ultimate facts will be established").

13

Given that the badges of fraud are only evidentiary facts, it follows that Jenette was not required to plead them.[8] "Missouri is a fact-pleading state." *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. banc 1997). Under the fact-pleading standard, a petition must contain "a short and plain statement of the facts showing that the pleader is entitled to relief." Rule 55.05. However, "[t]he facts that must be pleaded are the ultimate facts, not evidentiary facts." *R.M.A.*, 568 S.W.3d at 425. "Ultimate facts are those the jury must find to return a verdict for the plaintiff." *Id.*

Although there is no approved instruction for an action brought under section 428.024.1(1), in a common-law fraudulent misrepresentation claim, a jury must find the ultimate fact that the defendant represented a material fact "with the intent that plaintiff rely on such representation." MAI 23.05 (8th ed.). The jury is not required to find the existence of circumstances supporting an inference of intent; it must simply find the defendant possessed the requisite intent. In similar fashion, the ultimate fact Jenette is required to plead is Douglas's actual intent to hinder, delay, or defraud creditors – not the badges of fraud or statutory factors recognized in section 428.024.2 that may permit a factfinder to infer he possessed such intent.[9]

---

[8] Additionally, the allegations of Jenette's petition support the existence of at least five statutory factors that may be considered in determining Douglas's actual intent, including: the transfer was made to an insider; Douglas retained possession or control of the property after transfer; before the transfer, Douglas had been sued, resulting in a judgment against him; Douglas did not receive consideration of reasonably equivalent value in exchange; and Douglas became insolvent shortly after the transfer was made or the obligation was incurred. *See* section 428.024.2(1), (2), (4), (8), (9).

[9] *Birkenmeier*, 312 S.W.3d at 389-90, and other decisions holding a plaintiff must plead facts supporting the existence of several badges of fraud to state a claim for relief under section 428.024.1(1) of the UFTA are overruled to the extent they so hold.

14

Further, Douglas and Laura are incorrect Rule 55.15 requires Jenette to plead Douglas's actual intent with greater particularity. While the rule provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," the last sentence of the rule provides "intent . . . and any other condition of mind of a person may be averred generally." So Rule 55.15 does not require Jenette to plead facts supporting the existence of several badges of fraud in the name of pleading fraud with particularity.

Because Jenette was required only to plead the ultimate fact of Douglas's actual intent and Rule 55.15 provides intent "may be averred generally," Jenette sufficiently pleaded Douglas's actual intent to hinder, delay, or defraud any creditor when she alleged Douglas transferred assets "with the actual intent to hinder, delay and/or defraud Jenette Konopasek from collecting on the Clay County Judgment and the Benton County Judgment."

In her second point on appeal, Jenette claims the circuit court erred in dismissing her petition because she alleged a cognizable claim under section 428.029 in that she alleged Douglas made a transfer without receiving a reasonably equivalent value in exchange for the transfer and Douglas was either insolvent at that time or became insolvent as a result of the transfer.

Section 428.029.1 provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer

15

or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Jenette alleged Douglas made a transfer when he deposited the settlement proceeds resulting from his personal injury claim and workers' compensation claim into an account he and Laura hold as tenants by the entirety. Further, Jenette alleged such transfer was fraudulent because Douglas "made the transfer without receiving a reasonably equivalent value in exchange for the transfer and Douglas[ ] was insolvent at that time or became insolvent as the result of the transfer." As discussed above, Jenette alleged sufficient facts to establish Douglas made a transfer, and the remaining allegations of the petition are sufficient to invoke relief under section 428.029.1. Therefore, Jenette stated a claim for relief under section 428.029.1.

## Conclusion

Jenette adequately pleaded a claim for relief under section 428.024.1(1) because she alleged facts that, if true, demonstrate she is Douglas's creditor and he made a transfer with the actual intent to hinder, delay, or defraud her. Similarly, she pleaded a claim for relief under section 428.029.1 because she also alleged Douglas made the transfer without receiving a reasonably equivalent value in exchange and either was insolvent or became insolvent as a result of the transfer. Therefore, the circuit court erred in dismissing the petition, the circuit court's judgment is reversed, and the case is remanded.

_____
PATRICIA BRECKENRIDGE, JUDGE

All concur.

16